**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| In re: | Chapter 11 |
| BURNS AND ROE ENTERPRISES, INC. | Case No. 00-41610 RG |
| Debtor. | |

| | |
|---|---|
| CONTINENTAL CASUALTY COMPANY AMERICAN CASUALTY COMPANY, | |
| Appellants, | Civil Action No. 05-2529 (KSH) |
| vs. | and |
| BURNS AND ROE ENTERPRISES, INC., | Civil Action No. 05-4125 (KSH) |
| Appellee. | **OPINION** |

**KATHARINE S. HAYDEN, U.S.D.J.**

## I.      INTRODUCTION

Appellee-debtor Burns and Roe Enterprises, Inc. ("appellee" or "debtor") filed a

voluntary petition for relief under Chapter 11 of the Bankruptcy Code on December 4, 2000 and

continues to operate the business as the debtor-in-possession.  On April 11, 2005, U. S.

Bankruptcy Judge Rosemary Gambardella granted debtor its fourteenth extension of exclusivity

1

in which to file and solicit acceptances of a plan of reorganization pursuant to 11 U.S.C. §

1121(d) to May 16, 2005 and July 15, 2005, respectively.  On June 29, 2005, Judge Gambardella

granted debtor's fifteenth motion to extend the exclusivity periods to August 15, 2005 and

October 15, 2005.  Appellants Continental Casualty Company and American Casualty Company

(collectively "CNA" or "appellants") appeal both orders.  Appellants request that the Court

reverse these two extension orders; enter an order providing that the debtor's exclusivity period

for filing a plan of reorganization is terminated effective April 11, 2005 (alternatively June 29,

2005); prohibit debtor from requesting or receiving any other extensions of exclusivity; and

provide other further relief as the Court deems just.  For the reasons that follow, the decisions of

the bankruptcy court are **affirmed.**

## II.       BACKGROUND

In its brief on the first appeal, the debtor states that "[t]he Chapter 11 filing was

precipitated by massive increases in asbestos-related personal injury complaints filed against [it],

coupled with the refusal of [CNA] to defend or indemnify the Debtor in asbestos lawsuits,

despite a 16-year history of contributing to defense and settlement costs."  Appellee's Brief at 2,

No. 05-2529 (July 7, 2005).  Upon the filing of the bankruptcy, the United States Trustee

appointed a Committee of Unsecured Creditors ("Creditors' Committee") and, as well, a Future

Claims Representative ("FCR") to represent the present and future asbestos-related personal

injury claimants.  Pursuant to § 524(g) of the Bankruptcy Code, the debtor has set up a trust that

will assume all present and future liabilities incurred by personal injury, wrongful death, or

property-damage actions caused by asbestos.  Upon confirmation of a reorganization plan that

includes a § 524(g) trust, a bankruptcy court issues a "channeling injunction" that prevents

anyone from taking legal action against the debtor for claims that should be channeled to the trust. Both the trust and the channeling injunction must be included in the reorganization plan, and 75% of the class claimants who will be channeled to the trust (here, represented by the FCR) must vote in favor of the reorganization plan in order for the § 524(g) trust mechanism to be utilized. If approved, the combination of the trust and the channeling injunction allows a company to emerge intact from Chapter 11 bankruptcy essentially free from both present and future asbestos-related tort liability.

Because the only two extensions at issue in these appeals are the fourteenth and fifteenth, the details of the early background of the Chapter 11 case will not be addressed. On December 15, 2003, debtor filed its first amended Plan of Reorganization as well as a Disclosure Statement, and was under a deadline of February 13, 2004 to solicit acceptances to its Plan. Due in part to the numerous objections filed to both the Plan and the Disclosure Statement, including objections by appellants, the bankruptcy court extended debtor's solicitation deadline numerous times. The bankruptcy court approved the Disclosure Statement on June 4, 2004 after two amendments, but did not approve the Plan of Reorganization pending discovery and hearings on the objections. At a status conference on November 18, 2004 debtor informed the bankruptcy court that it had reached a settlement with one of its insurance carriers, Hartford Accident and Indemnity Company ("Hartford"), under which Hartford would pay the bankruptcy estate $62.5 million to fund the § 524(g) trust for asbestos claimants. If approved, the Hartford settlement would necessitate changes to the then-filed Plan of Reorganization. On December 6, 2004, debtor filed a motion for approval of the settlement to which appellants objected. The court overruled the appellants' objections to the settlement and directed the parties to agree on the form

of the orders.  The court also granted debtor the thirteenth extension of its period of exclusivity to file and solicit acceptances of its Plan to March 15, 2005 and May 15, 2005, respectively. Because the parties were unable to agree on their own to the form of orders approving the Hartford settlement,  the bankruptcy court drafted and entered the approval order on February 17, 2005.

At this point, however, debtor was compelled to draft substantial changes to its Plan in order to comply with the decision in In re Combustion Engineering, Inc., 391 F.3d 190 (3d Cir. 2004), which was issued on December 2, 2004.  There the Third Circuit held that a channeling injunction could not be used to shield non-debtor affiliates against independent asbestos-related claims, and it invalidated a reorganization plan with a channeling injunction that had the effect of "extend[ing] bankruptcy relief to two non-debtor companies outside of bankruptcy."  Id. at 237. Believing this ruling would preclude approval of its then-existing Plan, debtor began making changes.   Because of the need to change the Plan as well as the delay in the approval of the Hartford settlement, debtor requested another extension.  The bankruptcy court held a hearing on April 11, 2005, at which both the Creditors' Committee and the FCR supported the extension motion.  The bankruptcy court granted debtor the extensions to May 16, 2005 and July 15, 2005 for the filing and solicitation of acceptances of its Plan.  This was the fourteenth extension granted to debtor, and is the subject of appellants' first appeal to this Court, #05-2529.

In granting that extension, the bankruptcy court held that debtor had presented sufficient cause to justify extending its period of exclusivity because, first, the Hartford settlement was a significant step in the reorganization in that it would allow the debtor to file a plan in which the trust for future asbestos claimants would be funded by $62.5 million. Transcript of Hearing 62:6-

14,  In Re Burns & Roe Enter., Inc., No. 00-41610 (Bankr. D. N.J., April 11, 2005).   Second,

negotiations were taking place with both the Creditors' Committee and the FCR regarding

distribution of the trust proceeds, which the bankruptcy court deemed to be evidence of debtor's

good faith progress toward reorganization.   Id. 62:15-19.  The bankruptcy court also found that

the size and the complexity of the case as well as the need to comply with the Third Circuit

decision in Combustion Engineering contributed to sufficient cause to grant debtor's request for

extension.  Id. 63:10-20.  The bankruptcy court found that the debtor was making significant

progress in its reorganization and would continue to make progress going forward.  Id. 63:16-20.

It also found that there were unresolved contingencies that would have a substantial effect on the

debtor's Plan if they were resolved. Id. 64:1-5.  Finally, the bankruptcy court did not find any

evidence that the debtor was seeking the extension of time in order to pressure creditors to

accede to reorganization demands.  Id. 63:1-4.

      Before the appeal of the fourteenth extension was decided, debtor moved for another

extension of its exclusivity period.  The bankruptcy court heard this motion on June 29, 2005,

and granted debtor's request for extension of exclusivity and solicitation of acceptances to

August 15 and October 15, 2005, respectively.  This was the fifteenth extension granted to

debtor, and  is the subject of appellants' second appeal to this Court, #05-4125.  In granting this

extension,  the bankruptcy court found that the record supported cause for the extension because

of the size and complexity of the case,  the good faith progress towards reorganization, and the

bankruptcy court's belief that the debtor was not seeking extension of exclusivity to pressure

creditors to accede to reorganization demands. Transcript of Motion Hearing 48:5-25,  In Re

Burns & Roe Enter., Inc., No. 00-41610 (Bankr. D. N.J., June 29, 2005).  In addition, the

bankruptcy court found that the resolution of the unresolved contingencies was "under way."  Id. 49:5-11.  The bankruptcy court also noted that both the Creditors' Committee and the FCR again supported the extension.  Id. 48:25-49:4.  Finally, the bankruptcy court stated that it was "satisfied that there has not been the type of prejudice to [the appellants] to tip the balance in favor of ending exclusivity today."  Id. 49:15-21.  The bankruptcy court declined to declare that this was debtor's final extension, but cautioned the debtor that it would "take that request into consideration" if necessary at a later date.  Id. 50:1-11.

## III.    STANDARD OF REVIEW

This Court reviews a bankruptcy court's decision to extend debtor's periods of exclusivity for abuse of discretion.  In re Hoffinger Indus., Inc., 292 B.R. 639, 642 (B.A.P. 8th Cir. 2003).  See also  In re Geriatrics Nursing Home, Inc.,  187 B.R. 128, 131 (D. N.J. 1995).  Abuse of discretion can lie in either the failure to "apply the proper legal standard or to follow proper procedures in making the determination."  Zolfo, Cooper & Co. v. Sunbeam-Oster Co., Inc., 50 F.3d 253, 257 (3d Cir. 1995).  Abuse of discretion can also be found if the bankruptcy court's decision was based on clearly erroneous findings of fact.  Resyn Corp. v. United States, 851 F.2d 660, 664 (3d Cir.1988).  Any legal interpretations of the bankruptcy court receive plenary review.  In re Engel, 124 F.3d 567, 571 (3d Cir. 1997).

## IV.    JURISDICTION

This Court has jurisdiction to hear an appeal from an order of the bankruptcy court pursuant to 28 U.S.C.A. § 158(a)(2), which states that "[t]he district courts of the United States shall have jurisdiction to hear appeals . . . from interlocutory orders and decrees issued under section 1121(d) of title 11 increasing or reducing the time periods referred to in section 1121 of

such title . . . ."  28 U.S.C.A. § 158(a)(2).  See also In re White Beauty View, Inc., 841 F.2d 524, 527 (3d Cir.1988).

## V.    DISCUSSION

### A.  Extensions of Exclusivity Under the Bankruptcy Code - What is "Cause"?

The Bankruptcy Code allows a Chapter 11 debtor the exclusive right to file a reorganization plan for the first 120 days that the debtor is in bankruptcy.  11 U.S.C. § 1121(b). Under § 1121(d), a bankruptcy court may increase the debtor's exclusivity period beyond the initial 120 days on request of a party in interest "for cause," after notice and a hearing.  Whether or not to grant an extension of exclusivity "is a matter of discretion based on all facts and circumstances," In re Mid-State Raceway, Inc., 323 B.R. 63, 68 (Bankr. N.D. N.Y. 2005), but the discretion "is limited by the requirement that cause be shown . . . ." In re Perkins, 71 B.R. 294, 298 (W.D. Tenn. 1987).  However, a bankruptcy court has "broad discretion to determine what is sufficient cause in each individual case."  In re Sharon Steel Corp., 78 B.R. 762, 765 (Bankr. W.D. Pa. 1987).

Neither the Bankruptcy Code nor its legislative history defines "cause."  However, the examples given in the legislative history are instructive.  According to the Senate Report, cause may be established by "a showing of some promise of probable success." S. Rep. No. 95-989, at 118 (1978), as reprinted in 1978 U.S.C.C.A.N. 5787, 5904.  The House stated that "[c]ause might include an unusually large or an unusually small case,  delay by the debtor or recalcitrance among creditors."  H.R. Rep. No. 95-595, at 406 (1977), as reprinted in 1978 U.S.C.C.A.N. 5787, 6362.  Many courts have attempted to define "cause" in the context of an extension of the exclusivity period.  A "huge debtor with a complex financial structure generally constitute[s]

cause for extending the exclusivity periods." In re Texaco, Inc., 76 B.R. 322, 326 (Bankr. S.D. N.Y. 1987). "[A] debtor's showing of progress in formulating a plan in the face of . . . unusual procedural or substantive difficulties or developments in the case may . . . establish the requisite "good cause" for extension of the exclusivity periods." In re Nicolet, Inc., 80 B.R. 733, 742 (Bankr. E.D. Pa. 1987). Cause for an extension of exclusivity may be found where "sheer mass, weight, volume and complication of the [ ] filings . . . justify a shakedown period." In re Manville Forest Prod.Corp., 31 B.R. 991, 994-995 (S.D. N.Y. 1983). Another factor that has been considered is whether progress is being made regarding acceptance of the plan. In re Crescent Mfg. Co., 122 B.R. 979, 982 (Bankr. N.D. Ohio 1990).

Both the legislative history and the courts have also discussed when it is *not* appropriate to grant an extension. For example, "[a]n extension should not be employed as a tactical device to put pressure on parties in interest to yield to a plan they consider unsatisfactory." S. Rep. No. 95-989, at 118 (1978), *as reprinted in* 1978 U.S.C.C.A.N. 5787, 5904. "[E]xtensions are impermissible if they are for the purpose of allowing the debtor to prolong reorganization while pressuring a creditor to accede to its point of view on an issue in dispute." Matter of Lake in the Woods, 10 B.R. 338, 345-346 (D.C. Mich. 1981).

### B. APPELLANTS' FIRST ARGUMENT:  § 1121(d) disfavors repeated extensions of debtor's period of exclusivity.

Appellants first argue that the legislative history of § 1121(d) shows that Congress disfavors repeated extensions of debtor's exclusivity. They contend that setting limits on a debtor's exclusivity period is meant to balance the negotiating strength between parties and expedite the reorganization process. Appellants' Brief at 5-6, No. 05-2529 (June 10, 2005).

8

They argue that the allowable bases for cause decrease over time, and that extensions should not be routinely or cavalierly granted.  Id. at 6-7.  Appellants also state that since the 2005 amendments to the Bankruptcy Code provide additional limitations on the debtor's exclusivity periods, Congress has shown its disapproval of  "cavalier extensions by the courts."  Id. at 8, citing to The Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, PL 109-8, April 20, 2005, 119 Stat 23.

In opposition, appellee argues that the decision of whether or not to extend the debtor's period of exclusivity is entrusted to the discretion of the bankruptcy court.  Appellee Brief at 9, No. 05-2529 (July 7, 2005). Congressional intent, appellee asserts, is best discerned by the statutory language of § 1121(d), which reads, in pertinent part, "the court *may* for cause reduce or increase" the exclusivity period of the debtor.  Id.  As further evidence of the discretionary standard, appellee notes that an order of the bankruptcy court that extends the period of exclusivity will only be set aside if this Court finds an abuse of discretion. Id.

The decision of whether or not to grant an extension of exclusivity is squarely within the discretion of the bankruptcy court, subject to a finding of cause.  See discussion supra Part V.A. See also In re Mid-State Raceway, Inc., 323 B.R. 63 (Bankr. N.D. N.Y. 2005); In re Sharon Steel Corp., 78 B.R. 762  (Bankr. W.D. Pa. 1987); In re Perkins, 71 B.R. 294 (W.D. Tenn. 1987). Contrary to appellants' assertion, the legislative history of § 1121(d) does not show that Congress disfavors repeated extensions of exclusivity, nor does it mention repeated extensions of exclusivity at all.  Rather, the legislative history is clear that the point of exclusivity is "to promote an environment in which the debtor's business may be rehabilitated and a consensual plan may be negotiated." H.R. Rep. No. 103-835, at 36 (1994), *as reprinted in* 1994

9

U.S.C.C.A.N. 3340, 3344. Presumably, therefore, so long as exclusivity is extended upon the bankruptcy court's finding of cause and where the ultimate goals are to rehabilitate the debtor's business and negotiate a consensual plan of reorganization, congressional intent is satisfied. The Court notes that the legislative history shows that Congress disfavors *"undue* extension[s]" that result in "excessively prolonged and costly delay, to the detriment of creditors." Id. (emphasis added). However, a bankruptcy court's finding of cause precludes such undue extensions, thereby preventing any excessive delays. Therefore, this Court finds that the bankruptcy court did not abuse its discretion when weighing appellants' objections in light of the legislative history and purpose of § 1121(d).

Appellants point to In re Timbers of Inwood Forest Association, Ltd., 808 F.2d 363 (5th Cir. 1987) (en banc), aff'd U.S. Savings Association of Texas v. Timbers of Timbers of Inwood Forest Association, Ltd., 484 U.S. 365 (1988), for the proposition that the period of debtor exclusivity was "meant to free parties from their role as debtor's hostages and, thereby, to expedite the reorganization process." Appellants' Brief at 5-6, No. 05-2529 (June 10, 2005). The Court finds that appellants' reliance on Timbers of Inwood Forest is misplaced. That court did not state that the period of debtor exclusivity was "meant to free *parties* from their role as debtor's hostages," as appellants state. Instead, the Fifth Circuit stated in Timbers that the period of debtor exclusivity "was designed . . . to limit the delay that makes *creditors* the hostages of Chapter 11 debtors." Timbers, 808 F.2d at 372 (emphasis added).

Appellants state that "courts have recognized that the Bankruptcy Code was intended to create 'a relative balance of negotiating strength' among interested parties." Appellants' Br. at 6, No. 05-2529 (June 10, 2005), relying on In re Lake in the Woods, 10 B.R. 338 (E.D. Mich.

10

1981).  But this mischaracterizes the holding in Lake in the Woods.  In that case,  the court stated

that the Code was intended to create "a relative balance of negotiating strength among *debtor and*

*creditor*," not, as appellants state, "among interested parties."  Lake in the Woods, 10 B.R. at

343.  Appellants are not creditors of this debtor, but non-creditor insurance carriers who issued

policies to the debtor. The Creditors' Committee supports the debtor's request for an extension in

the exclusivity period, as does the FCR.  Presumably, therefore, neither the creditors nor the

future claimants are being held hostage by these extensions in the debtor's exclusivity period.

Furthermore, as the bankruptcy court pointed out,  there remains some dispute as to whether

appellants are even "parties in interest" such that they are entitled to make the present objections

or submit competing reorganization plans.  Tr. of Hr'g 61:7-13 (Bankr. D. N.J. April 11, 2005).

Appellants cite In re McLean Industries, Inc., 87 B.R. 830, 834 (Bankr. S.D.N.Y. 1987)

for its observation that extensions of exclusivity should not be granted "routinely" or

"cavalierly." Appellants' Br. at 6, No. 05-2529 (June 10, 2005).  In context, however, while the

court made that warning, it also stated that "where the exclusive period is insufficient because of

extraneous factors, exclusivity *should be continued*."  McLean Industries, Inc., 87 B.R. at 834

(emphasis added).  In the case before this Court, the bankruptcy court found numerous

extraneous factors provided sufficient cause to extend the debtor's periods of exclusivity and

made findings to that effect.  In granting the extension that is the subject of the first appeal, the

bankruptcy court found the following reasons contributed to a finding of cause.  First,  the debtor

was making good faith progress toward reorganization, as evidenced by the Hartford settlement

and the ongoing negotiations between the debtor, the Creditor's Committee, and the FCR.  Tr. of

Hr'g 62:6-19 (Bankr. D. N.J., April 11, 2005).  Second, the debtor had to change its Plan to

comply with the Third Circuit decision in Combustion Engineering. Id. 63:10-20.  Third, the size

and complexity of the case, in combination with other factors, warranted the extension.  Id.

63:10-20.  Fourth, the bankruptcy court deemed that the debtor would continue to make progress

toward reorganization.  Id. 63:16-20.  Fifth, the existence of unresolved contingencies that would

have a substantial effect on the debtor's Plan if they were resolved.  Id. 64:1-5.  Finally, the

bankruptcy court did not find any evidence that the debtor was seeking the extension of time in

order to pressure creditors to accede to reorganization demands.  Id. 63:1-4.  In granting the

extension that is the subject of the second appeal, the bankruptcy court found the following

reasons contributed to a finding of cause.  First,  the size and complexity of the case, in

combination with other factors, warranted the extension.  Tr. of Mot. Hr'g 47:22-48:2 (Bankr. D.

N.J., June 29, 2005). Second, the debtor's good faith progress towards reorganization justified an

extension.  Id. 48:5-21.  Third,  the bankruptcy court deemed that the debtor was not seeking

extension of exclusivity to pressure creditors to accede to reorganization demands. Id. 48:5-25.

Fourth, the resolution of the unresolved contingencies was "under way."  Id. 49:5-11.  Fifth,

both the Creditors' Committee and the FCR again supported the extension.  Id. 48:25-49:4.

Finally, the bankruptcy court stated that it was "satisfied that there has not been the type of

prejudice to [the appellants] to tip the balance in favor of ending exclusivity today."  Id. 49:15-

21.  This Court easily finds that the bankruptcy court's assessments were neither routine nor

cavalier.  There was no abuse of discretion.

        Although appellants argued that the 2005 amendments to the Bankruptcy Code show that

Congress disapproves of  "cavalier extensions by the courts," the bankruptcy court noted that

appellants conceded that those amendments do not impact this case.  Tr. of Mot. Hr'g 45:10-18

(Bankr. D. N.J. June 29, 2005).

The Court also notes that appellants argued at the motion hearings that the extension of the debtor's exclusivity was inconsistent with the legislative intent of the Bankruptcy Code. As discussed above, the legislative history surrounding § 1121 indicates that Congress enacted the limited exclusivity period to avoid imbalance in the bargaining leverage between a bankrupt debtor and its creditors. The bankruptcy court considered this issue in its decision by pointing out that both the Creditors' Committee and the FCR support the extension of exclusivity, Tr. of Hr'g 64:19-23 (Bankr. D. N.J., April 11, 2005), and by pointing out that there was no substantiation to appellants' allegation that the debtor sought this extension of time to pressure creditors to accede to reorganization demands. Id. 62:6-19.

In one of their reply briefs, appellants offer new support for their argument that because under § 1121(d) non-creditor parties in interest are entitled to request a reduction in or termination of the debtor's period of exclusivity, Congress also intended the bankruptcy courts to balance the interests of such non-creditors when passing on that request. Appellants' Reply Br. at 5-6, No. 05-2529 (July 21, 2005). However, neither case that appellants cite supports this proposition. Appellants take a portion of In re Wallace & Gale Company, 385 F.3d 820, 829 (4th Cir. 2004), completely out of context in arguing that non-creditor parties have rights nearly equal to those of creditors on the issue of extending exclusivity. In that case, the court was addressing the interpretation of insurance contracts in a bankruptcy estate. In discussing whether to apply state or federal law, the court stated: "[t]he property interests involved here are the rights of the insurance companies to have their obligations for payment ascertained," and it went on to find that state law applied. This observation has nothing to do with the issue at hand. Similarly, the

13

decision in In re Lehigh Valley Professional Sports Club, Inc., 2000 Bankr. Lexis 237, 11-12 (Bankr. D. Pa. 2000), which discussed the differences between old Chapter XI and new Chapter 11, talks about the "competing interests which Congress sought to balance" in the new legislation, but not in a manner that supports appellants' argument.  The opinion defines "competing interests" as those of debtor and creditors, and nothing in the opinion suggests that Congress intended that bankruptcy courts balance the interests of non-creditors when passing on a debtor's request for extension of exclusivity.

Based on the foregoing, this Court does not find an abuse of discretion in the bankruptcy court's determinations.  Having so concluded, the Court is constrained to point out the unhelpful way in which appellants presented their arguments to the contrary.  In their brief, they state that "the bases for 'cause' to extend exclusivity decrease over time," and cite six cases in a long footnote, none of which stands for the stated proposition. Appellants' Br. at 7, No. 05-2529 (June 10, 2005). Appellants then state that "the justifications for other parties to be allowed to file competing plans increase and must be balanced with other factors," id., and cite two cases in a footnote, neither of which supports appellants' position.  Id. at 7 n.5.  In fact, the first case cited, In re Service Merchandise Co., 256 B.R. 744, 751 (Bankr. M.D. Tenn. 2000), does not give, as appellants claim, a list of nine factors used in determining cause to extend exclusivity.  Rather, that case presents a discussion of factors used to determine whether the court should grant an extension of time to assume or reject a lease under § 364(d)(4) of the Bankruptcy Code, which is irrelevant to the present inquiry.  Further,  this list of factors does *not* include "existence of good faith and time case pending," contrary to appellants' express assertion.  Appellants' Br. at 7, n.5, No. 05-2529 (June 10, 2005).

14

**C.  APPELLANTS' SECOND ARGUMENT: The bankruptcy court failed to determine debtor's motion was both procedurally and substantively deficient.**

Appellants argue that debtor's motions were procedurally deficient because the debtor did not provide proper affirmative record evidence to support its requests, and because the bankruptcy court mistakenly relied upon evidence outside the record to find cause.   Appellants' Brief at 10-13, No. 05-2529 (June 10, 2005). Appellants also argue that the debtor's motions were substantively deficient because debtor did not provide sufficient cause for the extensions granted. Id. at 13-19.  The gravaman of appellants' procedural argument is that the bankruptcy court erroneously relied on mere "allegations" by the debtor to decide whether or not cause existed, "most notably" the size and complexity of the case and debtor's efforts to obtain the Hartford settlement.  Appellants contend that the bankruptcy court's review of the motion for extension of exclusivity should have been limited to the materials submitted in the motion, and that due process requires that other parties have notice and opportunity to respond to any other materials considered by the bankruptcy court.  Appellants particularly take exception to what they assert is a lack of affirmative evidence that the size and complexity of the bankruptcy case support the requested extensions and to a lack of affirmative evidence showing that the debtor has been making efforts to obtain the settlement with Hartford insurance.  In support of their argument, appellants rely on In re Parker Street Florist & Garden Center, Inc., 31 B.R. 206 (Bankr. D. Ma. 1983),  In re Nicolet, Inc., 80 B.R. 733 (Bankr. E.D. Pa. 1987), and Mulvaney v. Rush, 487 F.2d 684 (3d Cir. 1973).   In opposition, appellee argues that the bankruptcy court may take judicial notice of certain adjudicative facts, including the size and complexity of the bankruptcy case before it and the existence of the settlement with Hartford insurance.

15

Disputes within a bankruptcy case are divided into two types: adversarial proceedings and contested matters.  In In re Aughenbaugh, 125 F.2d 887 (3d Cir. 1942), the Third Circuit held that an adversarial proceeding within a bankruptcy case should be treated as "an independent litigation" and the bankruptcy court may not consider documents filed only in the underlying bankruptcy case unless they were also offered at the hearing.  Id. at 889.  The court reasoned that it was a "fundamental concept of procedural due process that a party to litigation is entitled to have the evidence relied on by his opponent presented at the hearing of his case."  Id.   More recently, in In re Indian Palms Associates Ltd. v. California Federal Bank, 61 F.3d 197 (3d Cir. 1995), the Third Circuit applied the Aughenbaugh rule and stated that the bankruptcy court "cannot properly use documents filed only in the underlying bankruptcy case unless that use can be justified under the judicial notice doctrine."  Id. at 204.  However the court noted the procedures governing contested matters are less formal than those governing adversarial proceedings.  Id. at 204 n.11.  Therefore, the court found that the lower court's decision to consider the entire case file was justified under the judicial notice doctrine because "the contested matter [was] sufficiently associated with the general administration of the debtor's estate."  Id. at 204.

An extension of a debtor's period of exclusivity is a contested matter, not an adversarial proceeding.  See, e.g., In re Dow Corning Corp., 208 B.R. 661, 664 (Bankr. E.D. Mich. 1997).  As such, the Aughenbaugh rule as modified by Indian Palms is the proper framework to apply to the case at bar.  The two specific exceptions that appellants make to the lack of affirmative evidence are the allegations of the size and complexity of the bankruptcy case and that the debtor has been making efforts to obtain a settlement with Hartford insurance. The proper inquiry is

16

whether these matters were sufficiently associated with the general administration of the bankruptcy to justify the bankruptcy court's notice of them without the express introduction of affirmative evidence at the motion hearings.

This Court easily finds that inasmuch as the bankruptcy court has been handling the administration of this case since December 4, 2000, it is able to make a reliable determination about the size and complexity without additional affirmative evidence.  In addition,  appellants were aware of debtor's reliance on the size and complexity of the bankruptcy case as part of its showings of cause.  Counsel for appellants stated that debtor offered both the complexity of the case and the Hartford settlement as part of its "cause" offering in the previous motion for extension of exclusivity.  The Court also notes the following statements in appellants' brief: "Debtor's oft-repeated claim that the size and complexity of this case justifies a further extension of exclusivity no longer has merit . . ." and  "this case has been pending for over four years, and any *issues regarding its size or complexity have long been known by all parties*."  Appellants' Br. at 14,  No. 05-2529 (June 10, 2005) (emphasis added).  The records of both motion hearings demonstrate that counsel for appellants strenuously argued against the bankruptcy court finding that the case was sufficiently large and complex to justify an extension, belying any suggestion that appellants were denied an opportunity to respond.  That the bankruptcy was large and complex was not a stray piece of random evidence buried in a copious case file about which appellants were taken by surprise. The bankruptcy court did not abuse its discretion by relying upon the size and complexity of the case in making its decisions to grant the motions.

Appellants were also well aware of the existence of the Hartford settlement as well as its details, as evidenced by their objection to debtor's December 6, 2004 motion for approval of the

settlement, which took place prior to the orders on appeal.  In the motion hearings,  counsel for appellants urged the bankruptcy court to reject the proposition that the Hartford settlement provided additional cause to extend debtor's exclusivity. Again, there was no evidentiary surprise sprung upon the appellants.  Furthermore,  the existence of the Hartford settlement, as evidenced, *inter alia*, by an order approving the settlement, is the type of information about which the bankruptcy court was entitled to take judicial notice.  See, e.g., In re Indian Palms Associates, 61 F.3d at 205.  Once the bankruptcy court approved the Hartford settlement (prior to the orders appealed herein), the existence of the Hartford settlement was not seriously in dispute and the bankruptcy court did not abuse its discretion by relying upon it.

Turning to the specific cases appellants rely on, as the bankruptcy court noted,  Parker Street Florist, 31 B.R. 206, is distinguishable.  Tr. of Hr'g 61:23-63:9 (Bankr. D. N.J. April 11, 2005).  That ruling turned on the fact that the only cause alleged by the debtor was its desire to "prevent a small creditor from interfering with its reorganization and proposal of a plan,"  Parker Street Florist, 31 B.R. at 207,  *not* as appellants suggest in their brief,  the lack of evidence proffered to support the debtor's alleged cause, Appellants' Brief at 10, No. 05-2529 (June 10, 2005).  The decision rejected the *cause* itself, not the insufficiency of evidentiary support for the cause.  Nicolet, 80 B.R. 733, can also be distinguished.  There, the debtor offered the entire bankruptcy file "without any selectivity" into evidence on the day of the hearing.  That court found that this offering was "out of step with the underlying . . . due process" rationale of Aughenbaugh because it deprived the opponents of a meaningful chance to examine the evidence and respond.  Nicolet., 80 B.R. at 743.  In contrast,  appellants were aware of and meaningfully responded to the evidence in question.

18

As a final note, appellants' reliance on an isolated sentence from the Third Circuit's decision in Mulvaney v. Rush, 487 F.2d 684, that "statement[s] by counsel unless stipulated to, are not evidence and cannot be considered as such," is inapposite.  Mulvaney was an appeal from a grant of habeas corpus on the grounds of double jeopardy.  The Third Circuit reversed because the district court made a decision concerning the substance of the underlying trials without reviewing the record of the underlying trials, relying instead on statements by counsel.   The context of particular phrase quoted by the appellants was the Mulvaney appellant's attempt to use briefs as evidence by sending them to the court as exhibits. "Perhaps the appellant is of the view that statements in briefs are evidence and the record may be supplemented in this way. As stated above, statement (sic) by counsel, unless stipulated to, are not evidence and cannot be considered as such." Mulvaney v. Rush, 487 F.2d at 687.  The court went on to hold that "[i]t was inappropriate to find error in a presumptively valid state court proceeding by this procedure." Id. Both its context and its analysis make the Mulvaney quotation of no consequence to the issues at bar, and raise questions about the methods appellants use in doing their research.

Under the rubric of both Aughenbaugh and Indian Palms,  this Court finds no abuse of discretion in the bankruptcy court's decisions to consider these limited matters from the underlying bankruptcy case and rejects appellants' position that they were evidentially out of bounds.

Appellants also argue that the bankruptcy court abused its discretion by finding cause to extend the debtor's period of exclusivity because, they claim, in fact the case is *not* large, the case is *not* complex, the case involves limited issues, and litigation regarding the insurance policies does not constitute cause.  Alternatively, appellants argue that size and complexity alone

do not constitute cause.  In opposition, appellee argues that debtor has demonstrated sufficient cause to extend exclusivity because of the large size and complexity of the case, because the debtor is not using the extension to pressure creditors into accepting less beneficial terms (as evidenced by the fact that both the Creditors' Committee and the FCR support the extension motion), because the debtor is making progress toward reorganization, and because the debtor is paying its bills as they become due.  The bankruptcy court found that the following reasons supported its decisions to grant debtors the extensions of their periods of exclusivity: (1) the good faith progress that the debtor has made toward reorganization based in part on the Hartford settlement; (2) the existence of negotiations with other insurers; (3) the agreement of the Creditors' Committee and the FCR; (4) the lack of evidence that the extensions were for the purpose of pressuring creditors to accede; (5) the size and complexity of the case; (6) the Third Circuit opinion in <u>Combustion Engineering</u> that required debtor to rework its Plan; (7) the multiple settlements that the bankruptcy court approved; (8) the existence of unresolved contingencies; and (9) the need to resolve claims that would have a substantial effect on the Plan and the trust fund.  Tr. of Hr'g 62-64 (Bankr. D. N.J. April 11, 2005).  The bankruptcy court did not consider size and complexity alone to be sufficient cause, nor the existence of negotiations with insurers,  but found that the above factors, *taken as a whole*, were sufficient cause to grant the extensions.  The bankruptcy court supported its decisions with reasoned and appropriate facts and findings, and did not abuse its discretion.

### D.  APPELLANTS' THIRD ARGUMENT: Equity requires termination of exclusivity

Appellants argue that this Court should decide, as a matter of equity, to terminate debtor's

period of exclusivity because the debtor's actions are for an improper purpose, namely to gain leverage over other parties, and that such purpose is a breach of the debtor's duties as debtor-in-possession.  Appellants' Br. at 19-22,  No. 05-2529 (June 10, 2005). Appellants also argue that termination of the debtor's exclusivity will not prejudice the debtor nor any other party.  Id. at 23-24.  Appellee did not directly address this argument in its brief.

While appellants cite law review articles that flesh out the duties of a debtor-in-possession as well as cases that indicate that the debtor has a duty to file a plan of reorganization, they do not provide any support for their argument that requests for extensions of exclusivity constitute breach of those duties.  Even assuming, *arguendo*, that the requests for extensions constitute such breach,  appellants do not support their argument that the bankruptcy court should have denied the requests on that basis.  The bankruptcy court addressed this argument and appropriately did not find that the requests for extensions constituted breaches of the fiduciary duty of a debtor-in-possession. Tr. of Hr'g 64:11-18 (Bankr. D. N.J. April 11, 2005). This Court does not find any abuse of discretion in the bankruptcy court's determinations.

Within their argument that the debtor breached its duty as debtor-in-possession, appellants argue that the debtor should forfeit its right to seek an extension of exclusivity because debtor has proposed a "new-value" Plan based on the analysis in In re Situation Management Systems, 252 B.R. 859 (Bankr. Mass. 2000).  This Court finds nothing in the record to show that appellants raised this argument below.  Appellants also argue here for the first time that termination of the debtor's exclusivity will not prejudice the debtor nor any other party.  Neither of these arguments will be addressed.  An issue in an bankruptcy appeal that is raised for the first time in an appellate brief will not be considered by the district court on appeal.  Butler Consumer

Discount Co. v. Cain, 50 B.R. 388, 390 (D.C. Pa. 1985).  See also In re Bona, 124 B.R. 11, 16

(S.D.N.Y. 1991).

### E.  APPELLANTS' FOURTH ARGUMENT:  Debtor's second amended Plan favors debtor's parent at the expense of debtor's insurers.

In this argument, which is only raised in the second appeal, appellants argue that the

debtor should not have been granted extensions of its periods of exclusivity because debtor's

second amended Plan favors debtor's owner at the expense of debtor's insurers, including

appellants.  Specifically, appellants argue that Trust Distribution Procedures ("TDP's") in the

second amended Plan were negotiated without input from appellants and do not adhere to the

legal requirements under the Bankruptcy Code.  Appellants ask this Court to terminate debtor's

exclusivity so that appellants' competing plan of reorganization can be considered

contemporaneously with that of the debtor in order to make the most efficient use of the debtor's

and the bankruptcy court's resources.  Appellants argue that continued exclusivity allows the

debtor to pressure its insurers, including appellants, to accede to TDP's that are inconsistent with

the Code and applicable law.  In opposition, appellee argues that since it did not file a second

amended Plan until August 15,  2005, almost two months after the motion hearing, the

bankruptcy court could not have rejected the motion for extension on the grounds that the second

amended Plan was not confirmable.

At the hearing, the bankruptcy court stated that the debtor had not filed an amended Plan

as of that date.  Tr. of Mot. Hr'g 42:5-6 (Bankr. D. N.J. June 29, 2005).  Since the bankruptcy

court could not address the matter of legality of a plan's TDP's nor confirmability of a plan that

had not yet been filed, the bankruptcy court did not address appellants' arguments concerning the

second amended Plan.  This Court acts as an appellate court when considering an appeal of an order of the bankruptcy court, In re Grand Union Co., 200 B.R. 101, 106 (D. Del. 1996), and may review both claims that were argued before the court below as well as issues that were ruled on by the court below, Hartford Courant Co. v. Pellegrino, 380 F.3d 83, 90 (2d Cir. 2004). Since the issue of the confirmability of the second amended Plan was neither argued before nor ruled on by the bankruptcy court, this Court will not review this issue.  Assuming, *arguendo*, that appellants have standing to argue against confirmation of debtor's Plan, appellants will have the opportunity make their arguments against the second amended Plan at a subsequent plan confirmation hearing

## VI.    CONCLUSION

It hardly needs noting that the bankruptcy court is in a much better position than this Court to decide whether the debtor has requested these last two extensions for impermissible purposes, and the legal standard of abuse of discretion reflects this.  Moreover,  Judge Gambardella backed up her decisions on these extensions with reasoned conclusions based on facts well  known to the appellants.  This Court does not find an abuse of discretion and the decisions of  the bankruptcy court are **affirmed.**  An appropriate order will be entered.


/s/ Katharine S. Hayden
Dated:   November 2, 2005                                    Katharine S. Hayden, U.S.D.J.


23